UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PRIMED PHARMACEUTICALS LLC,

                Plaintiff,

-v-

STARR INDEMNITY & LIABILITY COMPANY,

                Defendant.

CIVIL ACTION NO. 21 Civ. 1025 (SLC)

**OPINION AND ORDER**

**SARAH L. CAVE**, United States Magistrate Judge.

## I. INTRODUCTION

Plaintiff PriMed Pharmaceuticals LLC ("PriMed") brought this breach of contract and declaratory judgment action against Defendant Starr Indemnity & Liability Company ("Starr") seeking damages and a declaration that Starr has a duty to defend and indemnify PriMed in connection with a pending trademark litigation. (ECF No. 1 ¶¶ 51–63 (the "Complaint")). Following the Court's Opinion and Order granting PriMed's motion for summary judgment, see PriMed Pharms. LLC v. Starr Indem. & Liab. Co., No. 21 Civ. 1025 (SLC), 2023 WL 2537849 (S.D.N.Y. Mar. 16, 2023) ("PriMed I"), PriMed moved for monetary damages (ECF No. 119 (the "Damages Motion")), which Starr opposes. (ECF No. 130 (the "Opposition")).

For the reasons set forth below, PriMed's Damages Motion is DENIED WITHOUT PREJUDICE.

## II. BACKGROUND

### A. Background

The Court incorporates by reference the factual and procedural background and defined terms set forth in PriMed I, 2023 WL 2537849, at *1–5.[1]  The Court sets forth only those additional facts necessary to the Damages Motion.

#### 1. The Abbott Litigation[2]

Business associates of PriMed's President and Owner, Matthew Zeigler ("Zeigler"), told him that Richard S. Schurin ("Schurin") of Stern & Schurin LLP (the "Firm") "had special expertise with regard to suits involving alleged infringement of products in the secondary wholesale market."  (ECF No. 123 ¶ 16).  For example, the Firm, "an intellectual property boutique," defended wholesalers in the trademark and trade dress litigation captioned Innovation Ventures, LLC v. Ultimate One Distribs. Corp., No. 12 Civ. 5354 (KAM) (E.D.N.Y.).  (ECF No. 124 ¶¶ 2, 17).

After speaking with Schurin and conducting "due diligence," Zeigler retained the Firm to represent himself and PriMed in the Abbott Litigation.  (ECF No. 123 ¶ 17).  When Zeigler signed an engagement letter with the Firm on November 29, 2015 (ECF No. 128-1 (the "First Engagement Letter")), Schurin's hourly billing rate was $550, while Steven Stern ("Stern") billed at $550 and other attorneys at the Firm billed at $325.  (ECF No. 123 ¶ 18; see ECF No. 124 ¶¶ 5, 7).  Zeigler considered these rates "to be reasonable for the type of legal services that they were to provide and given the seriousness of the Abbott Litigation to [him]self and [his] business."  (ECF No. 123 ¶ 19).  After Zeigler received the Firm's invoice for services provided in

---

[1] Internal citations and quotation marks are omitted from case citations unless otherwise indicated.
[2] Abbott Lab'ys, et al. v. Adelphia Supply USA, et al., No. 15 Civ. 5826 (CBA) (LB) (E.D.N.Y.).

2

December 2015, in the amount of $8,345, Zeigler became concerned about PriMed's cash flow and negotiated with the Firm for PriMed to pay a monthly flat fee of $6,500. (Id. ¶¶ 20–24; see ECF No. 124 ¶¶ 9–10). The Firm's invoices for services rendered between April 2016 and December 2020 each state, "For Services Rendered in Abbott Litigation for [month]: $6,500.00," but do not contain individual time entries and descriptions. (ECF No. 128-4 (the "Flat Fee Invoices")). The Flat Fee Invoices, for which PriMed is seeking reimbursement from Starr in the Damages Motion, total $357,500[3] (the "Claimed Damages"). (ECF Nos. 123 ¶ 33; 124 ¶ 12; 128-4). PriMed claims that it "has been damaged by Starr's breach in having to pay for all of its attorney[s'] fees [in the Abbott Litigation] without the support of its insurance." (ECF No. 123 ¶ 37).

Zeigler has "been personally involved" in PriMed's defense in the Abbott Litigation "since the very beginning." (ECF No. 123 ¶ 22). He had "very regular phone consultations" with attorneys at the Firm regarding the Abbott Litigation and the Firm's invoices. (Id. ¶¶ 23–25). Schurin prepared Zeigler for and defended him at his deposition. (Id. ¶ 28). Following summary judgment motions in the Abbott Litigation and the filing of this action, Zeigler and the Firm reached an agreement "to revert back to an hourly billing arrangement for the Abbott Litigation." (Id. ¶ 31). That agreement, memorialized in a second engagement letter dated January 14, 2021 (the "Second Engagement Letter"), afforded PriMed "a two-month courtesy discount, saving Primed $13,000." (Id. ¶ 31). The Claimed Damages account for this discount. (Id. ¶ 33). Since the execution of the Second Engagement Letter in January 2021, the Firm has not yet issued an

---

[3] $6,500 (the monthly flat fee) multiplied by 57 (the number of months from April 2016 to December 2020, inclusive) minus $13,000 (a "two-month courtesy discount" (ECF Nos. 123 ¶ 33; 124 ¶ 12)) equals $357,500.

invoice to PriMed "due to the small quantity of work performed in the Abbott Litigation." (ECF No. 124 ¶ 13).

### a. The Firm's Attorneys

Four attorneys at the Firm represented PriMed in the Abbott Litigation. (ECF No. 124 ¶¶ 17–21). Schurin was admitted to the New York bar in 1995, and since at least 2000 has focused on intellectual property litigation. (Id. ¶ 18). Stern was admitted to the New York bar in 2001 and the Patent bar in 2002, and has appeared in more than "100 federal cases involving intellectual property matters." (Id. ¶ 19). Evgeny Krasnov was admitted to the New York bar in 2014 and is now a partner at his own firm, "where he continues to practice intellectual property law." (Id. ¶ 20). Michael Barer was admitted to the New York bar in 2014 and has "represented clients in all manner of trademark, trade dress, copyright and trade secret litigation." (Id. ¶ 21).

### b. The Phases of the Abbott Litigation

The Firm's representation of PriMed covered five phases of the Abbott Litigation. (ECF No. 124 ¶ 25). First, "Primed and other similarly situated wholesaler defendants" moved to dismiss certain of Abbott's claims, which the Honorable Carol Bagley Amon granted in part on January 4, 2017 to the extent of dismissing Abbott's RICO and unjust enrichment claims. (See id. ¶¶ 27–28). See Abbott Lab'ys. v. Adelphia Supply USA, No. 15 Civ. 5826 (CBA) (LB), 2017 WL 57802, at *1, 14 (E.D.N.Y. Jan. 4, 2017). Second, the Firm represented PriMed through fact and expert discovery between May 2016 and March 2018. (ECF No. 124 ¶¶ 29–36). Third, the parties filed motions for summary judgment, which Judge Amon granted in part and denied in part, dismissing the fraud claims against PriMed and certain other wholesaler defendants,

4

denying Abbott's motion as to willful infringement against PriMed and others, and denying Abbott's request for an award of damages, which was to be reserved for trial. (Id. ¶¶ 37–42). See Abbott Lab'ys v. Adelphia Supply USA, No. 15 Civ. 5826 (CBA) (LB), 2019 WL 5696148 (E.D.N.Y. Sept. 30, 2019). Fourth, PriMed sought to distance itself from the sanctions imposed on one of its codefendants, whose damages inquest was severed from the damages trial involving PriMed and the other remaining wholesaler defendants. (ECF No. 124 ¶¶ 43–47). See Abbott Lab'ys v. Adelphia Supply USA, No. 15 Civ. 5826 (CBA) (LB), 2020 WL 7643213 (E.D.N.Y. Dec. 23, 2020). Fifth, the Firm has continued to represent PriMed in preparation for trial, which is scheduled for May 2024, and in connection with settlement negotiations. (ECF No. 124 ¶¶ 48–50). See Abbott Lab'ys, et al. v. Adelphia Supply USA, et al., No. 15 Civ. 5826 (CBA) (LB), ECF min. entry Nov. 21, 2023)).

The Firm also represented three other defendants in the Abbott Litigation: Adelphia Supply USA; Value Wholesale, Inc.; and Med-Plus, Inc., and their principals. (ECF No. 134 ¶ 4).

### 2. This Action

On February 4, 2021, Primed commenced this action, asserting that Starr breached the Policy by refusing "to cover, defend, and compensate Primed in the Abbott Litigation," and seeking a declaratory judgment that Starr had "a duty to defend and indemnify PriMed in the Abbott Litigation." (ECF No. 1 ¶¶ 57–59, 61–63). The parties consented to Magistrate Judge jurisdiction (ECF Nos. 68–69), and, following briefing and argument (ECF Nos. 71–75; 90; 106–08; see ECF min. entry Jan. 5, 2023), on March 16, 2023, the Court granted PriMed's motion for summary judgment, holding that "Starr has a duty to defend PriMed in the Abbott Litigation." PriMed I, 2023 WL 2537849, at *10.

### a. The Damages Motion

Following a conference on April 19, 2023, during which Starr acknowledged that it "clearly [had] a duty to defend" PriMed in the Abbott Litigation, the Court set a briefing schedule for the Damages Motion. (ECF No. 117 at 6, 25; see ECF No. 114). During the conference, the Court referred PriMed's counsel to her prior decisions on fee applications, referenced her "experience preparing and revising bills," and noted that if PriMed "want[ed] to spend [its] money on experts," the Court could not "preclude [them] from doing it, but query whether it's really necessary." (ECF No. 117 at 5; see id. at 23 ("I would strongly consider [] whether you need expert reports.")). On June 2, 2023, PriMed filed the Damages Motion, accompanied by the expert report of Steven A. Tasher (ECF No. 122 (the "Tasher Report")),[4] Zeigler's declaration and exhibits thereto, including the First and Second Engagement Letter and the Flat Fee Invoices but not any contemporaneous attorney time records with respect to the Claimed Damages (ECF Nos. 123; 128-1 – 128-5), and Schurin's declaration (ECF No. 124). On July 21, 2023, Starr filed the Opposition (ECF No. 130), and on August 17, 2023, PriMed filed a reply along with a supplemental declaration from Schurin. (ECF No. 134).

---

[4] Tasher opines that: (i) "Primed's payment of the Firm's fees with no certainty of reimbursement and diligent case management by Primed and the Firm is the best evidence of a 'reasonable fee,'" (ii) the relevant factors "all support the reasonableness of the fees that Primed paid," and (iii) the Firm's hourly rates "are at or below prevailing market rates in the community for similar work." (ECF No. 122 ¶ 33).

## III. DISCUSSION

### A. Legal Standards[5]

#### 1. Breach of Contract Damages

"Where an insurer breaches the duty to defend, it must pay damages in the form of attorneys' fees and litigation expenses reasonably incurred by the insured in defending the underlying action." UPS v. Lexington Ins. Grp., 983 F. Supp. 2d 258, 267–68 (S.D.N.Y. 2013) ("UPS I"); see Beazley Ins. Co. v. ACE Am. Ins. Co., 197 F. Supp. 3d 616, 633 (S.D.N.Y. 2016) (holding that insured was entitled to recover from insurer who breached duty to defend "unreimbursed reasonable defense costs"), aff'd by, 800 F.3d 64 (2d Cir. 2018); U.S. Fid. & Guar. Co. v. Copfer, 48 N.Y.2d 871, 873 (1979) (holding that insurer who breached duty to defend "may be held liable for the expenses the insured incurred in providing for his own defense"); Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Greenwich Ins. Co., 103 A.D.3d 473 (1st Dep't 2013) (same). "The insurer must also pay interest at a rate of nine percent from the date of each legal bill." UPS I, 983 F. Supp. 2d at 268; see N.Y. C.P.L.R. § 5004. This award of interest "is non-discretionary." Turner Constr. Co. v. Amer. Mfrs. Mut. Ins. Co., 485 F. Supp. 2d 480, 490 (S.D.N.Y. 2007) (citing N.Y. C.P.L.R. § 5001). "Generally, the insurer will be liable for defense costs from the time that the duty was triggered (i.e., when a complaint alleging facts arguably entitling the insured to coverage is made) until it is determined that the actual facts place the case outside

---

[5] The parties agree that New York law applies to the Court's analysis of the Damages Motion. (See ECF Nos. 120 at 7–8 (arguing that "New York law remains the appropriate law to decide the remaining issues of damages and pre-judgment interest"); 130 at 12 ("[t]o calculate the reasonableness of attorneys' fees incurred, New York courts employ a lodestar analysis")).

the coverage provided." Md. Cas. Co. v. W.R. Grace & Cor-Conn., No. 88 Civ. 4337 (JSM), 1994 WL 167962, at *5 (S.D.N.Y. Apr. 29, 1994).

### 2. Reasonable Attorneys' Fees

In determining a reasonable attorneys' fee award, the Supreme Court and the Second Circuit have held that "the lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a 'presumptively reasonable fee.'" Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011) (quoting Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d 182, 183 (2d Cir. 2008)); see Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). "The party seeking reimbursement of attorneys' fees bears the burden of proving the reasonableness and the necessity of hours spent and rates charged." Onewest Bank, N.A. v. Cole, No. 14 Civ. (FB) (RER), 2015 WL 4429014, at *6 (E.D.N.Y. July 17, 2015); see Hensley, 461 U.S. at 437 (holding that "the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates"). Fees that are not adequately documented may be reduced or denied altogether. See Panerese v. Shiekh Shoes, LLC, No. 19 Civ. 4061 (JMA) (AYS), 2020 WL 7041083, at *3 (E.D.N.Y. Dec. 1, 2020) (denying fee request under state law where plaintiffs failed to submit "documentation regarding the nature of the work done by counsel, the amount of time reasonably required to do such work, or any records reflecting the costs of the action"); In re City of New York, No. 03 Civ. 6049 (ERK) (VVP), 2011 WL 7145228, at *11 (E.D.N.Y. Dec. 2, 2011) ("[w]here adequate records are not submitted, the court may deny fees altogether or reduce the award"), adopted by, 2012 U.S. Dist. LEXIS 190032 (E.D.N.Y. Jan. 19, 2012), aff'd by, 531 F. App'x 158 (2d Cir. 2013) (summary order); see also OneWest Bank, N.A. v. Raghunath,

No. 14 Civ. 3310 (RJD) (MDG), 2015 WL 5772272, at *6 (E.D.N.Y. Sept. 8, 2015) (reducing award of attorneys' fees due to lack of time records), adopted by, 2015 WL 5774784 (E.D.N.Y. Sept. 29, 2015); Cablevision Sys. N.Y. City Corp. v. Santiago, No. 02 Civ. 322 (DLC) (DF), 2003 WL 1882254, at *7 (S.D.N.Y. Mar. 17, 2003) (recommending denial of attorneys' fees that lacked supporting evidence of hours expended), adopted by, 2003 WL 1873914 (S.D.N.Y. Apr. 11, 2003); Cablevision Sys. N.Y. City Corp. v. Diaz, No. 01 Civ. 4340 (GEL) (FM), 2002 WL 31045855, at *5 (S.D.N.Y. July 10, 2002) (same).

Although the Second Circuit has generally required contemporaneous time records as a prerequisite to awarding attorneys' fees, see N.Y. State Ass'n for Retarded Child., Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983), "when fees are sought under New York contract law an application for attorney[s'] fees need not be supported by contemporaneous time records." Optima Media Grp. Ltd. v. Bloomberg, L.P., No. 17 Civ. 1898 (AJN), 2022 WL 992828, at *1 (S.D.N.Y. Mar. 31, 2022); see Riordan v. Nationwide Mut. Fire Ins. Co., 977 F.2d 47, 53 (2d Cir. 1992) (holding that where "[s]tate law creates the substantive right to attorney[s'] fees, [that] right [] cannot be deprived by applying the contemporaneous time records rule adopted in this Circuit"); UMB Bank, Nat'l Ass'n v. Bluestone Coke, LLC, No. 20 Civ. 2043 (LJL), 2021 WL 3292519, at *5 n.4 (S.D.N.Y. Aug. 2, 2021) (recognizing that, Carey notwithstanding, "the [Second] Circuit has since made clear that [the contemporaneous time records] rule does not apply in diversity cases where the right to a fee turns on state statutory or common law") (collecting cases). "Where an insurer has breached its duty to defend, the insured's fees are presumed to be reasonable and the burden shifts to the insurer to establish that the fees are unreasonable." Olin Corp. v. Ins. Co. of N. Am., 218 F. Supp. 3d 212, 228 (S.D.N.Y. 2016); accord

Value Wholesale, Inc. v. KB Ins. Co., No. 18 Civ. 5887 (KAM) (SMG), 2020 WL 6393016, at *5 (E.D.N.Y. Nov. 2, 2020). Notwithstanding that presumption, under New York law, the fee applicant still "bears the burden of showing the reasonableness of the fee by providing definite information regarding the way in which time was spent." Optima, 2022 WL 992828, at *2 (quoting MLB Props., Inc. v. Corporacion de Television v. Microonda Rafa, S.A., No. 19 Civ. 8669 (MKV) (GWG), 2021 WL 56904, at *4 (S.D.N.Y. Jan. 7, 2021)). That is, "even in instances where a court excuses the mandate to provide contemporaneous records, the burden is on the attorney claiming such fees to 'keep and present records from which the court may determine the nature of the work done, the need for it, and the amount of time reasonably required.'" Cabrera v. Schafer, No. 12 Civ. 6323 (ADS) (AKT), 2017 WL 9512409, at *6 (E.D.N.Y. Feb. 17, 2017), adopted by, 2017 WL 1162183 (E.D.N.Y. Mar. 27, 2017) (quoting F.H. Krear & Co. v. Nineteen Named Trs., 810 F.2d 1250, 1265 (2d Cir. 1987)); see Panerese, 2020 WL 7041083, at *3 (same). Thus, although New York law provides the basis for any award of fees in this action (see n.5, supra), PriMed was thus required to still provide a "proper and sufficient affidavit of services" to enable the Court to assess the reasonableness of the fees requested. Optima, 2022 WL 992828, at *2 (quoting MLB, 2021 WL 56904, at *4); see also UPS I, 983 F. Supp. 2d at 268 (requiring insured to submit "invoices for its defense costs and litigation expenses" to facilitate determination of award of damages for breach of duty to defend).

"'The district court retains discretion to determine . . . what constitutes a reasonable fee.'" Millea, 658 F.3d at 166 (quoting LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 758 (2d Cir. 1998)). In the duty to defend context, courts continue to calculate the "'lodestar' figure[,] which represents the 'presumptively reasonable fee.'" UPS v. Lexington Ins. Co., No. 12 Civ. 7961

(SAS), 2014 U.S. Dist. LEXIS 7316, at *2 (S.D.N.Y. Jan. 15, 2014) ("UPS II") (quoting Perdue v. Kenny A, 559 U.S. 542, 551–52 (2010)); see Cowan v. Codelia, 50 F. App'x 36, 39 (2d Cir. 2002) (affirming district court's use of lodestar method as "an aid in the overall determination of the reasonableness of the fees to be awarded" as damages for insurer's breach of duty to defend) (summary order).  A reasonable hourly rate is generally the "prevailing market rate[] for counsel of similar experience and skill to the fee applicant's counsel."  Farbotko v. Clinton Cnty., 433 F.3d 204, 209 (2d Cir. 2005).  The court's determination of the reasonable number of hours expended should "take[] account of claimed hours that it views as 'excessive, redundant, or otherwise unnecessary.'"  Bliven v. Hunt, 579 F.3d 204, 213 (2d Cir. 2009) (quoting Hensley, 461 U.S. at 434).  District courts are authorized "to make across-the-board percentage cuts in hours 'as a practical means of trimming fat from a fee application.'"  Green v. City of New York, 403 F. App'x 626, 630 (2d Cir. 2010) (summary order) (quoting In re "Agent Orange" Prod. Liab. Litig., 818 F.2d 226, 237 (2d Cir. 1987)).

B. **Application**

1. **The Parties' Arguments**

    a. **PriMed's Arguments**

PriMed, relying on the Tasher Report, argues that the Claimed Damages "were reasonable and necessarily incurred."  (ECF No. 120 at 9).  PriMed begins from the premise that its "proof of payment of the fees for its defense satisfies any initial burden of documentation, and is indeed the best evidence of the reasonableness, necessity and appropriateness of the fees."  (Id. (citing the Tasher Report, Value Wholesale, and Taco Bell Corp. v. Cont'l Cas. Co., 388 F.3d 1069, 1075–76 (7th Cir. 2004)).  PriMed contends that Starr "has absolutely no evidence that the payments

made by Primed were unreasonable," and asks the Court to ignore the "traditional lodestar analysis utilized in fee-shifting cases . . . because those data points already exist, as demonstrated by client review and payment of counsel's bills." (ECF No. 120 at 10). PriMed returns to "the documentation [it] submitted"—Schurin's declaration and the Tasher Report—as "confirm[ation] that the fees charged to and paid by Primed were eminently reasonable." (Id. at 14).[6]

### b. Starr's Arguments

Starr argues that the Damages Motion "must be denied in its entirety as [PriMed] has failed to meet its initial burden of providing contemporaneous time records establishing for each attorney for whom fees are sought, the date on which the work was performed, the hours expended, and the nature of the work done." (ECF No. 130 at 14). Because the Flat Fee Invoices "lack any description of the services performed, the dates when the work was carried out, the hours expended, or any other pertinent information," Starr argues that it is "impossible for the Court to evaluate the fees for purposes of a reasonableness analysis." (Id. at 14–15). Starr contends that PriMed misplaces its reliance on Value Wholesale, where the Firm did "provide[] contemporaneous billing records . . . that included specific descriptions of the work performed." (Id. at 16).

---

[6] PriMed refers here to "the documentation submitted by Value" (Id. at 14 (emphasis added))—the Firm's client in Value Wholesale—which suggests that the Firm has merely copied portions of the damages submission it prepared on behalf of Value in that litigation for use in the Damages Motion in this action. See Value Wholesale, 2020 WL 6393016, at *5–6 (discussing the fees the Firm charged Value during the Abbott Litigation).

2. **<u>Reasonableness Inquiry</u>**

Here, PriMed has failed to submit sufficient billing documentation that would allow the Court to assess the reasonableness of the Claimed Damages. The Court accepts that PriMed's submission of the Flat Fee Invoices satisfied its initial burden of showing reasonableness. <u>See Olin Corp.</u>, 218 F. Supp. 3d at 228 ("[w]here an insurer has breached its duty to defend, the insured's fees are presumed to be reasonable and the burden shifts to the insurer to establish that the fees are unreasonable"); <u>accord</u> <u>Columbus McKinnon Corp. v. Travelers Indem. Co.</u>, 367 F. Supp. 3d 123, 155 (S.D.N.Y. 2018), <u>adopted</u> <u>by</u>, 367 F. Supp. 3d 123 (S.D.N.Y. 2018). Although PriMed is correct that, as a technical matter, it is not required to submit for the Court's review contemporaneous billing records in order to be awarded fees (ECF No. 133 at 5), even under New York state law PriMed retains the burden to keep and present for the Court's review "records from which the court may determine the nature of the work done, the need for it, and the amount of time reasonably required." <u>Cabrera</u>, 2017 WL 9512409, at *6; <u>see</u> <u>Optima</u>, 2022 WL 992828, at *2 (holding that the party seeking a fee "still 'bears the burden of showing the reasonableness of the fee by providing definite information regarding the way in which time was spent'") (quoting <u>MLB</u>, 2021 WL 56904, at *4).

The documentation PriMed has provided is inadequate for that task. While Schurin's declaration provides some pedigree information about the attorneys at the Firm who performed services for PriMed and discusses the stages of the <u>Abbott</u> Litigation, it lacks any information about which tasks these attorneys performed and how many hours they expended.

(ECF No. 124 ¶¶ 18–21, 24–50).[7] Zeigler's declaration similarly lacks such details. (ECF No. 123). And while the Tasher Report opines on the reasonableness of the Firm's rates (ECF No. 122 ¶ 121 ("it is my opinion that the rates that Primed agreed to pay and the Firm charged are consistent with the prevailing market rates for similar work")), it offers no insight into the number of hours the Firm's attorneys expended, suggesting that, like the Court, Tasher was not provided with any billing records either. (See generally id.)[8] Finally, the Flat Fee Invoices—which state only "For Services Rendered in Abbott Litigation" (ECF No. 128-4)—are not detailed enough to enable the Court to conclude that the fees charged are reasonable. See Panerese, 2020 WL 7041083, at *3 (denying motion for fees because "[p]laintiffs have not submitted any documentation regarding the nature of the work done by counsel [or] the amount of time reasonably required to do such work . . ."); Cabrera, 2017 WL 9512409, at *6 (noting, even under New York law where

---

[7] The fee applicant in Optima submitted an attorney declaration that "provide[d] a general description of the work performed by counsel at each stage of the lawsuit and monthly invoices showing the overall amounts billed," but also included the number of hours the attorneys billed, and in comparison to Schurin's declaration, greater detail about the tasks performed. Optima, 2022 WL 992828, at *2–3. (See Declaration, Optima Media Grp. Ltd., et al. v. Bloomberg, L.P., No. 17 Civ. 1898 (AJN) (S.D.N.Y. June 4, 2021), ECF No. 186). Despite having the more substantive declaration than PriMed has provided, the Optima court nevertheless concluded that "the lack of detailed time records support[ed] a reduction of [the fee] request," and reduced the requested fees by 50%. Optima, 2022 WL 992828, at *2–4 (noting that "the billing information submitted is too vague for the Court to determine whether the hours claimed were appropriate"). Here, in contrast, the Court does not have the benefit of a description of the tasks the Firm's attorneys performed or the number of hours they expended, preventing the review that the Optima court was able to perform.

[8] The Court also agrees with the conclusion of other courts in this District that Tasher's opinions on the ultimate issue on the Damages Motion—the reasonableness of the Firm's fees—are, at best, "of limited weight." K.O. v. N.Y.C. Dep't of Educ., No. 20 Civ. 10277 (LJL), 2022 WL 1689760, at *11 (S.D.N.Y. May 26, 2022); see K.E. v. N.Y.C Dep't of Educ., No. 21 Civ. 2815 (KPF), 2022 WL 4448655, at *12 (S.D.N.Y. Sept. 23, 2022) ("the Court is unwilling to hand over the reins, as it were, to Mr. Tasher to decide the ultimate issue of the reasonableness of the fees requested"), remanded on other grounds, No. 22-2454, 2023 WL 2754656 (2d Cir. Jan. 31, 2023); Y.S. v. N.Y.C. Dep't of educ., No. 21 Civ. 711 (MKV), 2022 WL 3572935, at *6 (S.D.N.Y. Aug. 19, 2022) ("the Court does not weigh heavily the declaration[] by purported attorneys' fees expert Steven A. Tasher"), remanded on other grounds, No. 22-1914, 2022 WL 18871827 (2d Cir. Oct. 12, 2022).

contemporaneous time records and not required, counsel's "affirmative obligation to prepare a properly detailed and supported motion for fees—reconstructed or otherwise").

PriMed cannot claim lack of notice of the need to submit billing records—or other documentation sufficient to permit the Court to determine whether the number of hours expended were appropriate—in support of the Claimed Damages.  A fee applicant's obligation to submit billing records exists in the duty to defend context notwithstanding the initial presumption of the reasonableness of the fees the insured has paid.  See LM Ins. Corp. v. Safety Nat'l Cas. Corp., No. 21 Civ. 1802 (KAM) (RML), 2023 WL 6307760, at *23 (E.D.N.Y. Sept. 28, 2023) (requiring insured to submit to submit "invoices for its defense costs, fees, and litigation expenses"); UPS II, 2014 U.S. Dist. LEXIS 7316, at *5–6 (reviewing insured's counsels invoices for defense costs in underlying action and evaluating reasonableness of hourly rates and hours expended); UPS I, 983 F. Supp. 2d at 268 (requiring insured to submit "invoices for its defense costs and litigation expenses"); see also Olin Corp., 218 F. Supp. 3d at 228 (reviewing insured's counsel's invoices for defense costs in underlying action).[9]  Furthermore, in support of Value's request for defense cost damages in Value Wholesale, the Firm did submit invoices for the legal work it performed for Value in the Abbott Litigation, enabling the court to analyze whether the number of hours the Firm expended "were unreasonable amounts of work."  Value Wholesale, 2020 WL 6393016, at *5–6.  Accordingly, due to PriMed's failure to provide billing records or other documentation that would allow the Court to assess the reasonableness of the Firm's rates

---

[9] Riordan v. Nationwide Mutual Fire Insurance Co., 977 F.2d 47 (2d Cir. 1992), on which PriMed relies on reply (ECF No. 133 at 5), holds only that "contemporaneous time records" are not required, Riordan, 977 F.2d at 53, and does not absolve PriMed of the obligation to submit sufficient billing records for the Court to evaluate the reasonableness of the Claimed Damages, as the insureds in LM Ins. Corp., Value Wholesale, and UPS I each did.

and hours expended on the tasks it performed in the Abbott Litigation, PriMed has failed to demonstrate that it is entitled to the Claimed Damages. See Nationstar Mortg. LLC. v. Garcia, No. 15 Civ. 1854 (ADS) (SIL), 2015 WL 13745693, at *6 (E.D.N.Y. Oct. 19, 2015) (recommending denial of flat fee in the absence of time records), adopted by, 2016 WL 899268 (E.D.N.Y. Mar. 9, 2016).

While some courts have declined altogether to award fees unsupported by sufficient documentation, see, e.g., Panerese, 2020 WL 7041083, at *3; Cole, 2015 WL 4429014, at *7; Santiago, 2003 WL 1882254, at *7, the Court finds that the more appropriate course is to deny PriMed's Damages Motion, without prejudice and with the ability to renew the request for the Claimed Damages if, and only if, PriMed is able to provide billing records or other documentation sufficient to allow the Court to evaluate the reasonableness of both the hourly rates and the hours expended by the Firm in its defense of PriMed in the Abbott Litigation. See, e.g., Onewest Bank, N.A. v. Vaval, No. 14 Civ. 3437 (CBA) (PK), 2016 WL 3945342, at *4 (E.D.N.Y. July 19, 2016) (denying without prejudice request for "attorney[s'] fees based on a flat-rate agreement with its counsel" in the absence supporting documentation); Garcia, 2015 WL 13745693, at *6–7 (recommending denial without prejudice and leave to renew fee request for flat-rate attorneys' fees absent "appropriate supporting documentation").

## IV. CONCLUSION

For the reasons set forth above, PriMed's Damages Motion is DENIED WITHOUT PREJUDICE. By **February 8, 2024**, PriMed shall file a letter stating whether it intends to renew the Damages Motion with the supporting documentation described in this Opinion and Order, and, if so, proposing a briefing schedule in consultation with Starr.

The Clerk of Court is respectfully directed to close ECF No. 119.

Dated: New York, New York
January 25, 2024

SO ORDERED.

_____
SARAH L. CAVE
United States Magistrate Judge

17