UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PRIMED PHARMACEUTICALS, LLC,

                            Plaintiff,

      -v-

STARR INDEMNITY & LIABILITY CO.,

                            Defendant.

CIVIL ACTION NO. 21 Civ. 1025 (SLC)

**OPINION & ORDER**

**SARAH L. CAVE**, United States Magistrate Judge.

# I. INTRODUCTION

After granting summary judgment in favor of Plaintiff Primed Pharmaceuticals, LLC ("PriMed") in this insurance coverage action, the Court denied without prejudice PriMed's motion for monetary damages because PriMed "failed to submit sufficient billing documentation [to] allow the Court to assess the reasonableness" of its request for an award of $357,500.00 in attorneys' fees incurred in the Abbott Litigation (the "Claimed Damages"). PriMed Pharms. LLC v. Starr Indemn & Liab. Co., No. 21 Civ. 1025 (SLC), 2024 WL 283463, at *1 & n.3, *5 (S.D.N.Y. Jan. 25, 2024) ("PriMed II"); see PriMed Pharms. LLC v. Starr Indemn. & Liab. Co., No. 21 Civ. 1025 (SLC), 2023 WL 2537849, at *1–5 (S.D.N.Y. Mar. 16, 2023) ("PriMed I") (granting PriMed's motion for summary judgment and denying Defendant Starr Indemnity & Liability Co.'s ("Starr") motion for summary judgment).[1] The Court invited PriMed to renew its damages request "if, and only if, PriMed is able to provide billing records or other documentation sufficient to allow the Court

---

[1] Capitalized terms have the same definition as in PriMed I and PriMed II.

to evaluate the reasonableness of both the hourly rates and the hours expended by the Firm in

its defense of PriMed in the Abbott Litigation." PriMed II, 2024 WL 283463, at *6.

Now before the Court is PriMed's renewed motion for the Claimed Damages of

$357,500.00. (ECF No. 149 (the "Renewed Damages Motion")). Starr opposes the Renewed

Damages Motion. (ECF No. 154). For the reasons set forth below, the Renewed Damages Motion

is GRANTED IN PART and DENIED IN PART.

## II.DISCUSSION[2]

### A. Legal Standard

"Where an insurer breaches the duty to defend, it must pay damages in the form of

attorneys' fees and litigation expenses reasonably incurred by the insured in defending the

underlying action." UPS v. Lexington Ins. Grp., 983 F. Supp. 2d 258, 267–68 (S.D.N.Y. 2013)

("UPS I"); see Beazley Ins. Co. v. ACE Am. Ins. Co., 197 F. Supp. 3d 616, 633 (S.D.N.Y. 2016)

(holding that insured was entitled to recover "unreimbursed reasonable defense costs" from

insurer who breached duty to defend), aff'd, 880 F.3d 64 (2d Cir. 2018); U.S. Fid. & Guar. Co. v.

Copfer, 48 N.Y.2d 871, 873 (1979) (holding that insurer who breached duty to defend "may be

held liable for the expenses the insured incurred in providing for his own defense"); Nat'l Union

Fire Ins. Co. of Pittsburgh, Pa. v. Greenwich Ins. Co., 103 A.D.3d 473, 474 (1st Dep't 2013) (same).

Although the Second Circuit has generally required contemporaneous time records as a

prerequisite to awarding attorneys' fees, see N.Y. State Ass'n for Retarded Child., Inc. v. Carey,

711 F.2d 1136, 1148 (2d Cir. 1983), "when fees are sought under New York contract law an

---

[2] The factual and procedural background of this action is set forth in the Court's prior Opinions and Orders in this action and is incorporated by reference. See PriMed II, 2024 WL 283463, at *1–3; PriMed I, 2023 WL 2537849, at *1–5.

application for attorney[s'] fees need not be supported by contemporaneous time records."

Optima Media Grp. Ltd. v. Bloomberg, L.P., No. 17 Civ. 1898 (AJN), 2022 WL 992828, at *1

(S.D.N.Y. Mar. 31, 2022); see Riordan v. Nationwide Mut. Fire Ins. Co., 977 F.2d 47, 53

(2d Cir. 1992) (holding that where "[s]tate law creates the substantive right to attorney[s'] fees,

[that] right [] cannot be deprived by applying the contemporaneous time records rule adopted in

this Circuit"); UMB Bank, Nat'l Ass'n v. Bluestone Coke, LLC, No. 20 Civ. 2043 (LJL),

2021 WL 3292519, at *5 n.4 (S.D.N.Y. Aug. 2, 2021) (recognizing that, Carey notwithstanding,

"the [Second] Circuit has since made clear that [the contemporaneous time records] rule does

not apply in diversity cases where the right to a fee turns on state statutory or common law")

(collecting cases).  "Where an insurer has breached its duty to defend, the insured's fees are

presumed to be reasonable and the burden shifts to the insurer to establish that the fees are

unreasonable." Olin Corp. v. Ins. Co. of N. Am., 218 F. Supp. 3d 212, 228 (S.D.N.Y. 2016); accord

Value Wholesale, Inc. v. KB Ins. Co., No. 18 Civ. 5887 (KAM) (SMG), 2020 WL 6393016, at *5

(E.D.N.Y. Nov. 2, 2020); Columbus McKinnon Corp. v. Travelers Indemn. Co., 367 F. Supp. 3d 123,

155 (S.D.N.Y. 2018); East Ramapo Cent. Sch. Dist. v. N.Y. Schs. Ins. Reciprocal, 199 A.D.3d 881,

886–87 (2d Dep't 2021).

Notwithstanding that presumption, under New York law, the fee applicant still "bears the

burden of showing the reasonableness of the fee by providing definite information regarding the

way in which time was spent." Optima, 2022 WL 992828, at *2 (quoting MLB Props., Inc. v.

Corporacion de Television y Microonda Rafa, S.A., No. 19 Civ. 8669 (MKV) (GWG), 2021 WL 56904,

at *4 (S.D.N.Y. Jan. 7, 2021)).  That is, "even in instances where a court excuses the mandate to

provide contemporaneous records, the burden is on the attorney claiming such fees to 'keep and

present records from which the court may determine the nature of the work done, the need for

it, and the amount of time reasonably required[.]'"  Cabrera v. Schafer, No. 12 Civ. 6323 (ADS)

(AKT), 2017 WL 9512409, at *6 (E.D.N.Y. Feb. 17, 2017), adopted by, 2017 WL 1162183 (E.D.N.Y.

Mar. 27, 2017) (quoting F.H. Krear & Co. v. Nineteen Named Trs., 810 F.2d 1250, 1265 (2d Cir.

1987)); see Panerese v. Shiekh Shoes, LLC, No. 19 Civ. 4061 (JMA) (AYS), 2020 WL 7041083, at *3

(E.D.N.Y. Dec. 1, 2020) (same).  Thus, although, as set forth above, New York law provides the

basis for any award of fees in this action, PriMed remains obligated to provide a "proper and

sufficient affidavit of services" to enable the Court to assess the reasonableness of the fees

requested.  Optima, 2022 WL 992828, at *2 (quoting MLB, 2021 WL 56904, at *4); see also UPS I,

983 F. Supp. 2d at 268 (requiring insured to submit "invoices for its defense costs and litigation

expenses" to facilitate determination of award of damages for breach of duty to defend).

     "'The district court retains discretion to determine . . . what constitutes a reasonable

fee.'"  Millea v. Metro-N. R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011) (quoting LeBlanc-Sternberg v.

Fletcher, 143 F.3d 748, 758 (2d Cir. 1998)).  In the duty to defend context, courts continue to

calculate the "'lodestar' figure[,] which represents the 'presumptively reasonable fee.'"  UPS v.

Lexington Ins. Co., No. 12 Civ. 7961 (SAS), 2014 U.S. Dist. LEXIS 7316, at *2 (S.D.N.Y. Jan. 15, 2014)

("UPS II") (quoting Perdue v. Kenny A ex rel. Winn, 559 U.S. 542, 551–52 (2010)); see Cowan v.

Codelia, 50 F. App'x 36, 39 (2d Cir. 2002) (summary order) (affirming district court's use of

lodestar method as "an aid in the overall determination of the reasonableness of the fees to be

awarded" as damages for insurer's breach of duty to defend).  "[T]he lodestar—the product of a

reasonable hourly rate and the reasonable number of hours required by the case—creates a

'presumptively reasonable fee.'"  Millea, 658 F.3d at 166.  A reasonable hourly rate is generally

the "prevailing market rate[] for counsel of similar experience and skill to the fee applicant's

counsel." Farbotko v. Clinton Cnty., 433 F.3d 204, 209 (2d Cir. 2005).  The court's determination

of the reasonable number of hours expended should "take[] account of claimed hours that it

views as 'excessive, redundant, or otherwise unnecessary.'"  Bliven v. Hunt, 579 F.3d 204, 213

(2d Cir. 2009) (quoting Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)).  District courts are

authorized "to make across-the-board percentage cuts in hours 'as a practical means of trimming

fat from a fee application.'"  Green v. City of New York, 403 F. App'x 626, 630 (2d Cir. 2010)

(summary order) (quoting In re "Agent Orange" Prod. Liab. Litig., 818 F.2d 226, 237 (2d Cir.

1987)).

### B.  Application

#### 1.  Damages

PriMed has shown that from April 2016 to December 2020, it paid the Firm the Claimed

Damages.  (ECF No. 150 ¶ 5).  See PriMed II, 2024 WL 283463, at *1 & n.3.  As an initial matter,

the Court treats the Claimed Damages as presumptively reasonable.  See East Ramapo Cent. Sch.

Dist., 199 A.D.3d at 887 (explaining that, in insured's action to recover attorneys' fees incurred

due to insurer's breach, courts must "treat[] the fees [the insured paid] as presumptively

reasonable").

In addition, based on the qualifications of the attorneys at the Firm who worked on the

PriMed matter, the Court finds reasonable the hourly rates from April 2016 to June 2018 of $550

for partners and $325 for associates, and after July 2018, $600 for partners and $400 for

associates.  (ECF Nos. 124 ¶¶ 17–21; 150 ¶¶ 8–10).  See Value Wholesale,2020 WL 6393016,

at *5 (approving these hourly rates for Firm's representation of another wholesaler in Abbott Litigation).

Based on the Court's independent review of the record, however, the Court finds that the Claimed Damages are unreasonably high for three reasons.

First, the Firm's estimates of the number of hours it spent on each phase of the Abbott Litigation do not add up to the total estimated number of hours the Firm provides. Although the Firm "did not prepare contemporaneous billing records the work that it performed in the defense of Pri[M]ed in the Abbott Litigation[,]" PriMed has submitted a "reconstructed [] invoice showing the estimated time for the tasks undertaken in the defense of Pri[M]ed." (ECF No. 150 ¶ 6 (the "Reconstructed Invoice")). The Firm prepared the Reconstructed Invoice based on "invoices [that] were contemporaneously prepared for another insurance carrier" that was defending two other wholesalers in the Abbott Litigation. (ECF No. 150 ¶¶ 14–15, 64–66). Based on the Reconstructed Invoice, Schurin estimates that the Firm's attorneys performed at least 1,935 hours of work valued at approximately $838,000.00, although he does not explain how he calculated these amounts. (ECF No. 150 ¶¶ 16, 21). Using Schurin's estimates of the following hours expended in each phase of the Abbott Litigation between April 2016 and December 2020, however, the Court arrives at a much lower total number of total hours expended by the Firm's attorneys:

| Abbott Litigation Phase[3] | Hours Expended |
|---|---|
| 1. Initial Discovery and Motion to Dismiss | 278.3[4] |

---

[3] PriMed does not seek recovery for fees incurred in the fifth phase, preparation for trial and settlement negotiations since December 2020. See PriMed II, 2024 WL 283463, at *2. (See generally ECF No. 150).
[4] 3.3+5+29.6+202.4+6+25+7. (ECF No. 150 ¶¶ 23–30).

| 2. Fact and Expert Discovery and Discovery Motions | 398.5[5] |
|---|---|
| 3. Summary Judgment Motions | 791.2[6] |
| 4. Sanctions Motion Against Co-Defendant | 173[7] |
| **Total** | **1,641.0** |

Because PriMed has not substantiated its entitlement to reimbursement for 1,935 hours of attorney time, at most, PriMed would be entitled to recover for 1,641 hours expended by attorneys at the Firm in the Abbott Litigation, or approximately 15% less than Schurin's estimate. See Kirsch v. Fleet St., Ltd., 148 F.3d 149, 172 (2d Cir. 1998) (affirming fee award reduction where billing information did not substantiate hours claimed).

Second, while the Reconstructed Invoice does not reflect some of the improper billing practices for which this Court has reduced other attorneys' fee awards,[8] the Court finds even the reduced number of hours of 1,641 unreasonably high because the Reconstructed Invoice reflects excessive or vague billing for certain tasks, making an additional discount appropriate. While the Court is not required to "set forth item-by-item findings concerning what may be countless objections to individual billing items[,]" Lunday v. City of Albany, 42 F.3d 131, 134, (2d Cir. 1994) (per curiam), the Court highlights a few areas in the Reconstructed Invoice that reflect improper or excessive billing practices. For example, Schurin expended over 29 hours "[p]articipating [sic]

---

[5] 25+13.6+75.2+150.5+20.8+36.7+25.2+12.5+39. (ECF No. 150 ¶¶ 31–38).

[6] 17.9+8+482.4+282.9. (ECF No. 150 ¶¶ 39–55).

[7] 29.3+143.7. (ECF No. 150 ¶¶ 56–63).

[8] See, e.g., Love & Madness, Inc. v. Claire's Holdings, LLC, No. 21 Civ. 1913 (SLC), 2022 WL 5138806, at *10–12 (S.D.N.Y. Oct. 5, 2022) (applying 75% across-the-board discount to attorneys' fee award where billing records included time expended on unrelated matters, internal meetings, calls, and emails, and block billing); McDermott v. NYFirestore.com, Inc., No. 18 Civ. 10853 (AJN) (SLC), 2021 WL 952455, at *5–6 (S.D.N.Y. Jan. 5, 2021) (applying 40% across-the-board discount to attorneys' fee award to account for problematic billing issues).

and monitoring discovery [] disputes regarding co-defendant H&H Wholesale" and reviewing

Abbott's sanctions motion against H&H. (ECF No. 150-1 at 57). The Court finds it highly doubtful

that an in-house counsel carefully scrutinizing billing invoices would reasonably pay for a senior

litigation partner to spend the equivalent of three workdays "monitoring" a motion directed to

another defendant in the case. See Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of

Albany, 522 F.3d 182, 184 (2d Cir. 2007) (explaining that fee award should represent "what a

reasonable, paying client would be willing to pay" for). In addition, the Reconstructed Invoice

includes a total of 294 hours for "[r]epresenting Pri[M]ed at 49 separate depositions of Abbott

witnesses and co-defendant witnesses[,]" and lists the dates of each deposition, but does not

provide the number of hours at each deposition. (ECF No. 150-1 at 13–15). While such block

billing "does not automatically preclude recovery for the hours billed[,]" it does "create an

unacceptable risk that the aggregated total exceeded the reasonable hours worked[.]" Benihana,

Inc. v. Benihana of Tokyo, LLC, No. 15 Civ. 7428 (PAE), 2017 WL 6551198, at *3 (S.D.N.Y. Dec. 22,

2017); see BMaddox Enters. LLC v. Oskouie, No. 17 Civ. 1889 (RA) (SLC), 2023 WL 1418049, at *5

(S.D.N.Y. Jan. 6, 2023) (applying 20% reduction to account for block and vague billing), adopted

by, 2023 WL 1392075 (S.D.N.Y. Jan. 30, 2023). These billing issues justify a modest additional

reduction in the amount of attorneys' fees awarded.

Third, as Starr also correctly points out, most of the Reconstructed Invoice was "cut-and-

paste[d]" from entries on invoices the Firm prepared for other clients in the Abbott Litigation, in

some cases only changing the timekeeper's name. (ECF No. 154 at 3; see ECF Nos. 156 ¶¶ 4–5;

156-1 (comparing Reconstructed Invoice to invoices Firm prepared for other wholesaler clients)).

As the Court has explained, PriMed was "not required to submit for the Court's review

contemporaneous billing records in order to be awarded fees," and the Reconstructed Invoice is an improvement over the Flat Fee Invoices that PriMed submitted in support of the Original Damages Motion. PriMed II, 2024 WL 283463, at *5. The Court observes, however, that Schurin prepared the Reconstructed Invoice between four and eight years <u>after</u> the work was performed and attributed work done for other wholesaler clients to PriMed, calling into doubt the accuracy of the time entries and justifying a further reduction in the fee award. See Terminate Control Corp. v. Horowitz, 28 F.3d 1335, 1342–43 (2d Cir. 1994) (finding that 30% fee reduction for "lack of specific record keeping" was not an abuse of discretion); Murray ex rel. Murray v. Mills, 354 F. Supp. 2d 231, 238 (E.D.N.Y. 2005) (reducing fee award where attorney submitted time records compiled only for purposes of fee application rather than contemporaneous records).

Finally, the parties dispute whether the Firm or Starr had the obligation to allocate fees among the Firm's several wholesaler clients in the <u>Abbott</u> Litigation. (<u>Compare</u> ECF No. 154 at 3–6 <u>with</u> ECF No. 158 at 5–6). In New York, however, "the law is clear that the party seeking to allocate expenses bears the burden of proving what amount of allocation is appropriate once the insured has made a <u>prima facie</u> showing that certain amounts were spent in its defense." <u>High Point Design, LLC v. LM Ins. Corp.</u>, No. 14 Civ. 7878 (KBF), 2016 WL 426594, at *4 (S.D.N.Y. Feb. 3, 2016) (discussing <u>Health-Chem Corp. v. Nat'l Union Fire Ins. Co. of Pitts., Pa.</u>, 148 Misc. 2d 187, 559 N.Y.S.2d 435 (N.Y. Sup. Ct. N.Y. Cnty. 1990)). As Judge Matsumoto explained in rejecting another insurer's attempt to advance the same argument that Starr makes here, "[t]here is no doubt that [Starr] had a duty to defend [PriMed] regardless of whether [any other wholesaler] was included as a defendant in the <u>Abbott</u> Litigation, and regardless of whether [PriMed] and [the other wholesalers] retained the same law firm." Value Wholesale, 2020 WL 6393016, at *7.

9

If the Firm's legal work was performed in part for PriMed, "it follows that the work still would have been performed, solely for the benefit of [PriMed], even if [another wholesaler] were not a defendant." Id. Accordingly, the fact that the Firm's other wholesaler clients simultaneously benefitted from the legal work "does not completely or partially absolve [Starr] from its obligations" to pay the costs of PriMed's defense in the Abbott Litigation. Id. In addition, unlike the insurer in Value Wholesale, Starr has not convincingly shown that there were instances of legal work on the Reconstructed Invoice that benefitted only the Firm's other wholesaler clients. See id. at *7–8 (deducting from fee award value of legal work performed only for the benefit of non-insured wholesaler). Accordingly, Starr's allocation argument does not warrant an additional reduction in the amount of fees awarded.

To address the three problematic issues with the Reconstructed Invoice described above, the Court finds that it is appropriate to apply an additional 20% reduction to the Claimed Damages, resulting in a total amount of $286,000.00. See Kirsch, 148 F.3d at 173 (affirming 20% fee reduction for deficiencies in attorney billing records); BMaddox, 2023 WL 1418049, at *6 (applying 20% reduction for billing deficiencies).

### 2. Pre-Judgment Interest

PriMed seeks pre-judgment interest on the Claimed Damages at New York's statutory rate of nine percent. (ECF Nos. 1 at 13; 149 at 9). In addition to monetary damages for the breach of the duty to defend, "[t]he insurer must also pay interest at a rate of nine percent from the date of each legal bill." UPS I, 983 F. Supp. 2d at 268; see N.Y. C.P.L.R. §§ 5001(a), 5004(a). This award of interest "is non-discretionary." Turner Constr. Co. v. Amer. Mfrs. Mut. Ins. Co., 485 F. Supp. 2d 480, 490 (S.D.N.Y. 2007) (citing N.Y. C.P.L.R. § 5001); see Value Wholesale, 2020 WL 6393016,

at *8 (finding that "the rule that prejudgment interest is mandatory plainly applie[d]" to amount of fees insurer owed for breach of duty to defend).  "Where, as here, the interest stems from numerous unpaid obligations over a period of time, the court may calculate interest 'from a single reasonable intermediate date.'" Value Wholesale, 2020 WL 6393016, at *9 (quoting N.Y. C.P.L.R. § 5001(b)); see Oy Saimaa Lines Logistics Ltd. v. Mozaica-N.Y., Inc., 193 F.R.D. 87, 91 (E.D.N.Y. 2000) (calculating pre-judgment interest from midpoint of overdue payments).  The Court follows this precedent in applying the midpoint approach to calculating pre-judgment interest.

Here, Starr's breach of the Policy began on May 23, 2016, the date on which it notified PriMed of "its decision to disclaim coverage and deny liability under the Policy[.]" PriMed I, 2023 WL 2537849, at *4.  The last of the Flat Fee Invoices the Firm issued was dated June 30, 2021, for work the Firm performed in December 2020.  (ECF No. 128-4 at 58).  The Court presumes that payment was therefore due 30 days later, on July 30, 2021.  See Value Wholesale, 2020 WL 6393016, at *9 (applying an end date, for pre-judgment interest calculation purposes, of 30 days after date of final billing invoice).  The midpoint between May 23, 2016 and July 30, 2021 (a period of 1,894 days) is December 26, 2018 (947 days after May 23, 2016).  Accordingly, the Court will award PriMed pre-judgment interest at a rate of nine percent per annum on the damages award of $286,000.00, calculated from December 26, 2018 until the date of entry of judgment. As PriMed requests, the Court will allow PriMed to submit a proposed calculation of pre-judgment interest before judgment is entered.  (ECF No. 149 at 9).

### 3. Post-Judgment Interest

Although PriMed does not specifically request post-judgment interest (see ECF Nos. 1; 149), the applicable federal statute provides that "[i]nterest shall be allowed on any money

judgment in a civil case recovered in a district court . . . calculated from the date of entry of judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding . . . the date of judgment." 28 U.S.C. § 1961(a).  An award of post-judgment interest is mandatory.  See Schipani v. McLeod, 541 F.3d 158, 165 (2d Cir. 2008).  Accordingly, PriMed shall also be awarded post-judgment interest in an amount consistent with 28 U.S.C. § 1961.

### III. CONCLUSION

For the reasons set forth above, PriMed's Renewed Damages Motion is GRANTED IN PART and DENIED IN PART.  By **Friday, August 23, 2024**, the parties shall meet and confer and submit a proposed judgment awarding PriMed (i) $286,000.00 in monetary damages; (ii) pre-judgment interest calculated consistent with this Opinion & Order; and (iii) post-judgment interest in amount consistent with 28 U.S.C. § 1961, to be calculated by the Clerk of the Court on entry of the judgment.

Dated:       New York, New York
             August 16, 2024

SO ORDERED.

SARAH L. CAVE
**United States Magistrate Judge**